Reset Form

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

)
**CARMEN N WATSON** )
)
)
)
(Enter above the full name of Plaintiff(s)) )
)
vs. )
**UNIFIED SCHOOL    DISTRICT NO. 500 KCK** )   Case Number: 6:19-cv-01044-EFM-JPO
)                         (To be assigned by Clerk)
Name )
)
**6126 PARALELL PRWY** )
Street and number )
)
**KANSAS CITY  KS     66104** )
City          State       Zip Code )

**EMPLOYMENT DISCRIMINATION COMPLAINT**

1.  This employment discrimination lawsuit is based on (check only those that apply):

    **✓**  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. " 2000e, *et seq.*, for employment discrimination on the basis of race, color, religion, gender, or national origin.
    **NOTE**: *In order to bring suit in federal district court under Title VII, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

    ____  Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. " 621, *et seq.*, for employment discrimination on the basis of age (age 40 or older).
    **NOTE**: *In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file charges with the Equal Employment Opportunity Commission.*

    **✓**  American with Disabilities Act of 1990, as amended, 42 U.S.C. " 12101, *et seq.*, for employment discrimination on the basis of disability.
    **NOTE**: *In order to bring suit in federal district court under the American with*

1

*Disabilities Act, you must first obtain a right-to-sue letter from the Equal Employment Opportunity Commission.*

__√__ Other (Describe)

___ Title VII of the Civil Rights Act of 1964 (Title VII) Anti-Retaliation Provisions, Americans with Disabilities Act of 1990 Discrimination, 1993, and the Rehabilitation Act of 1973.

2. If you are claiming that the discriminatory conduct occurred at a different location than the address provided for Defendant, please provide the following information:

    _____
    (Street Address) (City/County) (State) (Zip Code)

3. When did the discrimination occur? Please give the date or time period:

    _____

## ADMINISTRATIVE PROCEDURES

4. Did you file a charge of discrimination against Defendant(s) with the Kansas State Division of Human Rights or the Kansas State Commission on Human Rights?

    __√__ Yes    Date filed: _____JUNE 23RD, 2017_____
    _____ No

5. Did you file a charge of discrimination against Defendant(s) with the Equal Employment Opportunity Commission or other federal agency?

    __√__ Yes    Date filed:    JUNE 23RD, (2017 DUAL
    _____ No

6. Have you received a Notice of Right-to-Sue Letter?
    __√__ Yes _____ No
    If yes, please attach a copy of the letter to this complaint.

7. If you are claiming *age discrimination*, check one of the following: **NO**

    _____ 60 days or more have passed since I filed my charge of age discrimination with the Equal Employment Opportunity Commission.
    _____ fewer than 60 days have passed since I filed my charge of age discrimination with

2

the Equal Employment Opportunity Commission

## NATURE OF THE CASE

8. The conduct complained of in this lawsuit involves (check only those that apply):
   ___ failure to hire me
   ___ termination of my employment
   ___ failure to promote me
   ___ failure to accommodate my disability
   ___ terms and conditions of my employment differ from those of similar employees
   **X** retaliation
   **X** harassment
   ___ reduction in wages
   **X** other conduct (specify): **PURSUANT TO TITLE VII ANTI-RETALIATION PROVISION SEC. 704(a) OF THE CIVIL RIGHTS ACT OF 1964, CIVIL RIGHTS ACT OF 1991**

   Did you complain about this same conduct in your charge of discrimination?

   **X** Yes ___ No

9. I believe that I was discriminated against because of (check all that apply):

   ___ my race or color, which is _____
   ___ my religion, which is _____
   ___ my national origin, which is _____
   ___ my gender, which is ___ male; ___ female
   **X** my disability or perceived disability, which is: **PSORIATIC ARTHRITIS, CHRONIC JOINT AND MUSCLE PAIN, ANXIETY AND DEPRESSION**
   ___ my age (my birth year is: _____)
   **X** other: **I OPPOSED MY EMPLOYERS UNLAWFUL PRACTICES OF, DAILY HARASSMENT AND DISCRIMINATION AGAINST DISABLED EMPLOYEE'S.**

   Did you state the same reason(s) in your charge of discrimination?
   **X** Yes ___ No

10. State here, as briefly and clearly as possible, the essential facts of your claim. Describe specifically the conduct that you believe is discriminatory and describe how each defendant is involved in the conduct. Take time to organize your statement; you may use numbered paragraphs if you find it helpful. It is not necessary to make legal arguments, or to cite cases or statutes.

    **SEE ATTACHED PAGES TITLED (FACTS OF CLAIM )**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(Attach additional sheets as necessary).

11. The acts set forth in paragraph 10 of this complaint:
    _____ are still being committed by Defendant.
    _____ are no longer being committed by Defendant.
    __X__ may still be being committed by Defendant.

12.                               Plaintiff:
    _____ still works for Defendant
    __X__ no longer works for Defendant or was not hired

13. If this is a *disability-related claim*, did Defendant deny a request for a reasonable accommodation?
    _____ Yes   _____ No

    Explain: _____

    _____

## REQUEST FOR RELIEF

As relief from the allegations of discrimination as stated above, Plaintiff prays that the court grant the following relief to Plaintiff: (check any and all that apply)
  _____ Defendant be directed to employ Plaintiff
  _____ Defendant be directed to re-employ Plaintiff
  _____ Defendant be directed to promote Plaintiff
  _____ Defendant be directed to _____

```
_____ Injunctive relief (please explain): _____
  X   Monetary damages (please explain): $500,000.00
_____ Costs and fees involved in litigating this case
_____ As additional relief to make Plaintiff whole, Plaintiff
```

seeks: _____

_____

and such other relief as may be appropriate, including attorney=s fees, if applicable.

Signed this 25th day of February, 2019.

                                     s/ *Carmen Watson*

                                     Signature of Plaintiff

                                     s/ Carmen Watson

                                     Name (Print or Type)

                                     Address

                                     5659 SLOAN AVE, KANSAS CITY, KS 66104

                                     City State Zip Code

                                     913.961.6642

                                     Telephone Number

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates { [ X ] Wichita, [ ] Kansas City, [ ] Topeka}, Kansas as the location for the trial in this matter.
                        (Select One Location)

                                     s/ *Carmen Watson*
                                     Signature of Plaintiff

## REQUEST FOR TRIAL BY JURY

Plaintiff requests trial by jury.  **X** Yes  _____ No
                            (Select One)
                                     s/ *Carmen Watson*
                                     Signature of Plaintiff

Dated: February 25th, 2019
(Rev. 10/15)

| EEOC Form 161 (11/16) | U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION |
|---|---|

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Carmen Watson<br>15077 W 123rd Circle<br>Olathe, KS 66062 | From: | St. Louis District Office<br>1222 Spruce Street<br>Room 8.100<br>Saint Louis, MO 63103 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 28D-2017-00537 | Joseph J. Wilson,<br>State & Local Program Manager | (314) 539-7816 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☒ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

_____    November 28, 2018
James R. Neely, Jr.,                  *(Date Mailed)*
Director

Enclosures(s)

cc: USD 500 KANSAS CITY KANSAS PUBLIC SCHOOLS
ATTN: Human Resources Director
6126 Parallel Parkway
Kansas City, KS 66106

Gregory Goheen, Attorney
MCANANY, VAN CLEAVE & PHILLIPS, P.A.
10 East Cambridge Circle Dr., Ste. 300
Kansas City, KS 66103

# UNITED STATES DISTRICT COURT FOR

# THE DISTRICT OF KANSAS

**CARMEN WATSON.**

        **Plaintiff,**

**V.**

        **CASE NO. _____**

        **REQUEST FOR**
        **JURY TRIAL DEMAND**

**KANSAS CITY KANSAS PUBLIC SCHOOLS**

**UNIFIED SCHOOL NO. 500**

        **Defendants,**

## FACTS OF CLAIM
### QUESTION 10.

**In continuance of the court pro se` employer complaint form brief statement of facts, complainant Carmen Watson further declares. On February 25th, 2019 petitions the Wichita District Court of Kansas and designated place of trial before selected jury for relief of compensatory damages from former employer the Unified School District No. 500 Kansas City Kansas Public Schools for violating her civil rights while employed, pursuant to Title VII of the Civil Rights Act of 1964, Anti-retaliation Provision.**

[1]

*Civil Rights Act of 1964 § 703,42 U.S.C. § 2000e-2 (1994). Section 703(a), 42 U.S.C. § 2000e-2(a), states in relevant part: It shall be an unlawful employment practice for an employer1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or 2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. Section 703 is the core anti-discrimination section of Title VII. 2 Civil Rights Act of 1964 § 704(a), 42 U.S.C. § 2000e-3(a) (1994) states in relevant It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment... because he [the employee] has opposed any practice made an unlawful employment practice by this sub-chapter, or because he has made a charge et.*

_____
[1]

**INTRODCUTION**

The complainant began employment with the school district July 14th, 2008, as a bus driver for the District's Department of Transportation. Ms. Watson began suffering a host health issues come year 2014 and from then through 2018 was diagnosed with several qualifying disabilities as defined in *42 U.S.C. §§ 12101*, *see exhibit (A)*. The plaintiff would ultimately be approved for FMLA and therefore became entitled to rights under the Family Medical Leave Act. *See exh.(b),* presents the employers' FMLA approval letter of the complainant. The Unified School District's Department of Transportation targeted and violated the rights of employee's who were protected under the Family Medical Leave Act and the Americans With Disabilities Act with daily harassment, unequal treatment, verbal abuse accusing the class of individuals burdening the department and retaliation. Once the complainant began to oppose the prohibited but usual practices by the employer, the employer immediately retaliated against Ms. Watson the opposer.

**OBEJECTING TO EMPLOYER**

On January 30th, 2017 at approximately 5:45pm, Ms. Watson went as the complaining party to the employers' assistant director of transportation (Mr. Miguel Martin), opposing the unbearable, employment practices against the disabled employee's, and disabled employee's who exercised their right to use Family Medical Leave. The complainant stated that the employers' routers Anita Rocha and Sandy Kiper who overseen the bus-driver's and bus-aide's had a unforgiving prejudice against the handicap/disabled employee's, which the class of individuals were often referenced as the "the FMLAer's, or the Faker's". The employer's prejudice against the class was well broadcast, however, the two routers who expressed their beliefs the most also had the most influence over the employee's day to day duties, and to oppose any action by them would result in even greater harassment, retaliations, and hostility aside from the given for having a disability. The complainant expressed her opposition to the employers' treatments specifically to the disabled/fmla'ers, giving them longer bus routes than normal drivers, refusing them to sign up for extra activities, routes with no down-time not even to stand-up and stretch. The complainant told the employer she opposed them referencing the group "the fakers", as it was wrong to purposely make their life a "living nightmare" and judge one's disability based on their appearance. The employer responded, "yes but we do need people who can really work, we don't know who is really sick, so it may be judging but I appreciate their (employers' router's), "passion" aka practices towards the disabled in wanting to get people in here who can do work". The meeting with the employer took place on January 30th, 2017, and on February 2nd, 2017 the

complainant restated the very facts in a email *see exh.(X)*, of what took place to the employers' executive director Lenora Miller, with Miguel Martin included.

The email, exhibit (X) provides the following elements;

- ❖ The employer was aware of the complainants' disability

- ❖ The complainant opposed the unlawful employment practices of discrimination and retaliation on January 30th, 2017.

- ❖ The employer did not protect the privacy of the protected group, as Mr. Martin stated " Priscilla plays the call-in voicemail we all know who's going to call in, what day and the reason".

- ❖ The employer was aware unlawful discriminatory and retaliatory acts were and had been taking place against the specific class of individuals.

- ❖ The employer was in acceptance, appreciative of the prohibited acts of violations pursuant to Title VII Civil Rights act of 1964, Americans with Disabilities Act and Family Medical Leave Act.

## EMPLOYERS' RESPONSE

The employer and the complainant met February 8th, 2017 at the board of education with the employer's executive director of transportation Lenora Miller and the complainant Ms. Watson in attendance, per the employer to discuss the plaintiff's complaint on January 30th, 2017, and February 2nd, 2017 email. In the meeting regarding the complainant's opposition the following matters were covered;

- ◆ The complainant's attendance record for the year and if exhausting all disability time the potential outcome.

- ◆ The complainant's prior year attendance record, per the employer, Ms. Watson exceeded the allowed days by 6.

- ◆ Per the employer this meeting was a verbal warning to the complainant as the February 2nd, 2017 email contained verbiage against district policy, Ms. Watson was "lucky" no grievance or further action was taken against her.

- ◆ The employer instructs the complainant to return to work, following the orders from both routers, in particular (Anita Rocha).

## EMPLOYERS ADVERSE ACTION

Come January 30th, 2017 the time of Ms. Watson's first complaint of allegations to the employer's she was enrolled in the optional benefits of short-term disability insurance and critical care. Being Ms. Watson is a person of multiple disabilities and sometime went on

doctor's medical leave, to have the two specific benefits was paramount. The company Unum through the district offered short-term disability that pays the qualified party 60% percent of there weekly income when absent from work more than 14 working days. The benefit not only allows the disabled party to maintain financially, and day-to-day living expenses, but also affords the employee to continue proper treatment. In this matter the complainant is personally on 8 medications monthly, averaging $15 per prescription, $25 primary physician co-pays and $50 specialist co-pay per visit when covered by insurance. The complainant had been employed almost 9 years at the time of making the initial complaint, and had never experienced an issue with any of her benefits. However following the January 30th, 2017, and February 2nd, 2017 complaint the employer immediately canceled Ms. Watson's short-term disability and critical care insurance.

[2]*An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. See, e.g. Rochon v. Gonzales, 438 F, 3Dm at 1213 (FBI)*

**EXHIBIT "X"**

Exhibit X, provides sufficient evidence the employer took such actions, showing prior and post Ms. Watson's complaint benefits received and lost. The employer couldn't hardly argue a simple err nor mishap, the cancellation of Ms. Watson's benefits was promptly thereafter her complaint, a mere unambiguous example of the employers' retaliatory practices. But for the complainant opposing the employer's acts of discrimination, harassment and retaliation against the disabled groups on January 30th, 2017 the employer undoubtedly wouldn't have taken such adverse action. *See exh.(X1)*, shows the complainants' two pay-stubs dating 1/13/17 1/31/17 both prior complaint to employer. In *exhibit (X1)*, under "After-Tax Deductions" for (STD) short-term disability and (CRITCARE) critical illness displays deductions for the two benefits. Post the complainants' opposition to employer, *see exh.(X2)*, are Ms. Watson's pay-stub's dating 2/13/17, and 2/28/17, where there the exhibit show's the employer no longer has the complainant enrolled nor paying premiums for the short-term, and critical care insurance. All possibilities have been explored and for no other reason but for relataliltory purposes did the employer interfere or alter with the complainants' benefits for the following reasons;

◆ The complainant had been enrolled in the particular benefits for several years without interruption and the very next pay period her benefits were canceled by the employer.

- The complainant had opposed the practices and acts by the employer toward the protected group of individuals qualified under the disability and family and medical leave act.
- The benefits the employer interrupted is optional and particularly beneficial to those with a serious illness or disability.
- The employer did not alter or interrupt any other benefits of the complainants, hence **only** the benefits in that would further negatively impact the disabled employee' as Ms. Watson had in good faith set out to seek a positive resolution in the initial meet.

**CONTINUED PRACTICES**

Following the employers' adverse action the employer then began directly targeting the complainant outside the usual harassing tactics imposed on the disabled group or FMLA recipients. Over the course of months the routers' would constantly call over a public radio, stating " were just making sure you came to work" laughing. When standard protocol for bus-drivers is to pre-trip the bus unit and for the driver to radio-in to base for a radio check. Attendance is never acknowledged over the radio scanner for any reason. The employer routers' then took the complainants' assigned bus of four years and made it readily available to sub-employee's instructing Ms. Watson to find a "spare bus" where she could. The employers' routers constantly changed the complainant's bus runs, and if they felt it was too easy they would remove the run, replacing it with a more lengthy one. In May 2017, the employers' routers took the complainants entire assigned run and gave it to a new hire, and demanded Ms. Watson learn and start a new route now even more misconstrued.

End of April 2017 the complainant went to the employer's assistant director of transportation Miguel Martin, requesting to file a complaint for retaliation as she had clearly now been singled out having reported and opposed the employers actions in January. The employer's Miguel Martin stated "it may seem that way but it was not", the employer refused to put anything in writing or take any action.

May 11th, 2017 the complainant went to the employer's assistant director to do a follow-up and request treatment after ongoing back pain that had begun after driving a out of service spare unit. The spare bus was assigned to the complainant by the employer's routers after they had given her assigned bus out for the morning. The complainant pre-tripped the unit and became aware the drivers seat was broken, stuck in the furthest back position as the seat could go. The complainant immediately asked the routers for another bus, employers' Anita Rocha interrupted stated "nope there ain't none". The complainant would drive the spare bus in an awkward sitting

position for three hours straight, and could hardly stand at the end of the shift, and proceeding on in hopes of getting better.

**DENIED TREATMENT**

Therefore, attempting to keep what peace may been left between her and the employer, the complainant advised the employer she would see if the painful sensation that had come after driving the spare would wear off. Now, on May 12th, 2017 the complainant ask employers' Miguel Martin for permission to been seen at the job clinic after her shift. The employers' assistant director states, due to Ms. Watson not requesting treatment within 72 hours there's nothing the employer could do. The employer states if she was going to seek independent care, the complainant would need to fill out an incident form. The following day the complainant informs Miguel Martin, per district policy the employee has 30 days to request treatment *see exh.(c)*. The employer refused acknowledge district policy or treatment to the complainant. The complainant, genuinely having the ongoing painful sensation sought treatment May 19th, 2017, where she was ordered to have an MRI on 5/30/2017 and paid $444.10 out-of-pocket *see exh.(d)* and diagnosed with two herniated disc.

The complainant had made reasonable request at the time she was injured when asking the employer for another bus, only at the employers' negligence was she injured. Also the employer having full knowledge of the complainants disability had the duty to make the workplace readily accessible to and usable by people with disabilities, *pursuant to the Americans with Disabilities Act of 1990.*

**BREACH OF CONFIDENTIALITY**

At the beginning of each school year the employer assigns every driver and bus-aide to a personal mail-box which is the employer's way to communicate with the employee. The employer places personal and confidential letters intended only for that specific employee. The complainant requested a copy of her incident report from her employer on May 17th, 2017.   On May 24th, 2017 the complainant found a copy of the report cramped inside a bus seat. The complainant Ms. Watson, met with the employer seeking explanation, and was then informed by the employers' router Anita Rocha that they had also given her mailbox away for public use the same time her assigned bus was made for open use. Upon the complainant requesting an investigation showing as to how the very personal and confidential record containing her name, social security number, date of birth, address, nature of injury, and phone number, was found stuffed in the seat of a bus the employer notified her one of the temporary bus-drivers that also

uses her once assigned mailbox, "grabbed it, saw it wasn't he's and put it in the seat". The employer's executive director Lenora Miller stated to the complainant, the temporary driver that held the sensitive document was a child-hood friend and she was sure he wouldn't do anything with Ms. Watsons' information. *See Exhibit (e)* following the breach, seven days later on May 24th, 2017 the complainant filed a 9 page level III grievance that includes further details of all accounts asserted throughout this claim, titled, Kansas City Kansas Public Schools, Discrimination, Harassment, Retaliation Complaint.. Civil Rights Act: Title VII 1964, 1972, Admen, 1973, ADA 1990, Sec 504, KAAD 1009…

**EMPLOYER RETALIATES**

Because in April 2017, Ms. Watson the complainant continued to make opposing statements and claims of unlawful employment practices by the employer now including retaliating for opposing the acts, the employer's retaliatory acts and practices went on to become more, aggressive, blunt, traumatic and obvious.

- The employer denied the complainant treatment for her workplace injury, the employer went outside their own policy in order to harm the complaining party, *see exh(f)*, states employee has 30 days.
- The employer was reckless in the complainants' confidential records allowing her personal data to be breached upon placing the document in a shared location.
- Upon the Ms. Watsons' filing the level III grievance with the employers' superintendent Cynthia Lane pursuant to the districts policy *see exh.(g)*, the employer' denied her grievance level at level III or seeking resolution with the District's superintendent, referring her back to executive director Lenora Miller, *see exh.(h)* again acting outside the employers' own policy with matters regarding Ms. Watson.

**DEMORALIZING INTERROGATION**

The employer requested Ms. Watson meet with the employers' executive director Lenora Miller beginning of June 2017 to discuss her grievance. The inhumane interrogation would last 6 hours and 20 minutes long, violating numerous state and federal laws and regulations. *See exh(I)*, show's part of Ms. Watson's medical record the employer had unlawfully obtained, gaining additional knowledge of her medical history, and diagnosis using the documents to interrogate, retaliate, and demoralize.

Immediately opening the interrogation, the employer (Lenora. Miller) presents the Unum report *exh.(I)*, pointing to the notes that states the plaintiff sufferers from anxiety, and depression and in quote states to the plaintiff, " you know I've been really worried about you this year, wondering

if you're going to make it, is this something we need to talk about". Shocked in tears, the complainant declined the employers suggestion to discuss the very private matter. The employer made the following point's throughout the 6 hour long interrogation;

- The employer warned the complainant having knowledge of her mental instabilities as a mandated employer, if it was believed Ms. Watson was not seeking proper treatment, she would be reported by the employer, possibly forced to receive treatment, and termination of employment.

- The employer recommended in order for Ms. Watson to satisfy any doubt of her mental state she should enroll in the 7 free counseling sessions the district offers for people like herself.

- The employer required Ms. Watson describe in detail her conditions, when the actual diagnosis was made and the treatment required, while the employer took notes.

- The complainant couldn't remember the exact names and spelling of all the prescribed medications, but had her medication bag, that was then confiscated by the employer so each prescription could be notated.

- The employer advised the complainant they would be re-evaluating her work for the year, and Ms. Watson would need to later e-sign the new evaluation once available online, *see exh.(J)*

- The complainant was thoroughly investigated on her race, and ethnic background, it was apparent race was supreme between the complainant who is a mixed race of black and employers' router Anita Rocha who is Hispanic. The employer had previously advised her she must get alone with Anita Rocha who "wasn't going anywhere", the employer frequently promotes to employees' in person, in meetings, and company website Hispanic/Latino recruitment. Router Anita Rocha has been the only Hispanic in the department of transportation's office staff for more than ten years.

### EMPLOYER RETALIATES(3)

Following the complainants' grievance on May 24th, 2017, and six hour interrogation June 9th, 2017, the complainant receives notice her short-term disability and critical insurance has been canceled per the employer's request. The employer performed the same exact retaliatory action following Ms. Watson's first complaint to her employer.

### KHRC( KANSAS HUMAN RIGHTS COMMISSION)

Concluding the June 9th, 2017 meeting along with other undeniable forms of retaliations by the employer, Ms. Watson was left with no choice but to file dual charges against the employer, KHRC docket no. 39402-17, EEOC charge no. 28D-2017-00537.

### EMPLOYER RETALIATES(4)

The complainant had went on an authorized medical leave January 18th, 2018. The complainant had also been notified by investigator Daniel J Wentling of the Human Rights Commission, that first contact had been made with the employer to began investigation. In the same month the

complainant received a letter of cancellation of benefits and had to send several emails to the employer attempting to resolve, see exh.(k). The first claim concluded with investigator Daniel J. Wentling issuing a no probable cause finding, followed by the EEOC' agreement in finding shortly after Ms. Watson refused the maximum monetary amount offered through Mr. Wentling in the amount of $2,000. Ms. Watson's investigator assured her if she did not accept the "capped" chances were she would be fighting in court alone. Ms. Wentling and the EEOC issued the right to sue letter two months thereafter.

**EMPLOYER RETALIATES (5)**

*See exhibit (L)*, the employer' human resource had began contacting the complainant immediately while on her short-term leave February 2018, suggesting circumstances that could result in termination or her resignation, prohibited acts continued by the employer. Although per district policy and pursuant to ADA and FMLA regulations the complainant shall remain on and not lose any benefits while on approved leave, following a meeting with the employer March 2017, with the Ms. Watson refusing to resign, come the following week the employer canceled all benefits entitled to the complainant shown in exhibit (M).

**EMPLOYERS' ULTIMATIUM**

The complainant was notified by Kansas Public Retire System's (KPERS) stating she had been approved for long-term disability on July 14th, 2018. The complainant contacted the employer August 28th, 2018 stating technically being a "retiree", she should now qualify for "retiree" benefits and wanted health insurance again, as Ms. Watson had been without health coverage since April 2018. The employer requested that in order for them to offer the complainant Cobra Insurance she would need to sign and agree to the employers document, stating " she had been with continuing coverage without lapse up until September 1st, 2018, and would be now converting to Cobra insurance", see exh(M). Ms. Watson refused to make the illegal claim to the insurance carrier in order to obtain new insurance coverage. The employer then notified the complainant they had Blue Cross Blue Shield KC back date the cancellation of her policy. The complainant still refused to sign, with respect to the employers little effort to make whole, this has been a continuous unacceptable pattern by the employer that has now been very costly and damaging to her health. It is no coincidence that one week after a meeting requesting the complainant resign the employer then cancels all of her enrolled benefits. As the same act when Ms. Watson complained about the employer partaking in discriminatory and retaliatory practices

January 2017, April 2017, and June 2017, nearly identical methods of retaliation had been taken in the instant.

Ms. Watson explained to the employer, their inexcusable actions went far beyond requesting the insurance company to backdate the cancellation date, as the employer was aware she was on medical leave and needed continuous treatment and coverage. In April 2018, Ms. Watson's last appointment while covered, returned lab results *see exh.(N)* testing positive results for a new serious diagnosis requiring the complainant seek immediate treatment. However, the complainant now no health coverage and paying for eight medications out of pocket, unable to seek proper treatment for the new diagnosis, or continue treatment for her previous serious illnesses, and because the employer retaliated each time the complainant opposed, alleged, filed charges, or mention the unlawful acts the employer repeatedly committed, damage the complainant suffered from retaliation became growing severe, beyond emotional and mental anguish. The employers' retaliatory acts was now causing physical harm to the Ms. Watson as her need for continuing treatment following the new diagnosis greatly effected her health.

**SECOND CHARGE**

Following the employers' continuous acts to violate Title VII sec. 703, 704(a) Anti-Retaliation Provision the complainant filed a second dual charge of employer retaliation KHRC charge no. 40446-19 currently pending investigation *see exh.(o)*. The employer agreed to Midland Mediation November 27th, 2018 in which the employer was only willing to sign acknowledging canceling the complainants' with Ms. Watson signing off a waiver of rights, needless to say there was no resolution.

**THREE ELEMENTS**

◆ The complainant and employee participated in a protected activity on January 30th, 2017 opposed the employer's unlawful acts discrimination and retaliation against the specified groups. The complainant was in good faith, and admissible by the employer.

◆ Adverse actions followed the complaint when the employer then targeted the complainant, illegally obtaining medical records, re-evaluating her years work, denying her treatment for a workplace injury in accordance with the employers' policy, constant canceling and interrupting benefits, threatening to terminate, and report the complainant as mentally unsound.

◆ A unanimous connection between the complainants activity and employers' action is established, Ms. Watson had been employed 6 years prior becoming disabled, and employed 8

years prior to having made any complaint whatsoever to the employer. In 8 years having never made complaint or concern, Ms. Watson never experienced any of the adverse actions by the employer as testified in the above paragraphs. The employers unlawful acts immediate followed Ms. Watson's opposition.

**SUMMARY**

The employer followed the complainants' initial meeting opposing the employers' unlawful acts with;

- Canceling her short-term disability, critical care insurance in February 2017.
- Taking away her assigned bus unit and designated mail-box.
- Re-assigning her bus run to a new driver, having her learn a new route all over.
- Forcing her to drive on out-of-service bus units that resulted in injury.
- Refused her treatment for her workplace injury even with District policy stating otherwise.
- The employer negligently allowed her confidentiality to be breached.
- Refused to allow her to file a grievance at level III even with District policy stating otherwise.
- Refused to allow her to seek resolution with the Districts Superintendent in accordance with policy.
- Used her meeting relating to the grievance as a 6 hour interrogation of her health, and mental disabilities and background detail.
- The employer had unlawfully obtained her medical records violating her privacy, breaching confidentiality, then used the medical records for retaliatory and harassment purposes.
- Followed by the interrogation, again stopped her short-term and critical care insurance.
- Suggested she resign while on leave come February 2018.
- Gave her a hard time, wouldn't respond in February 2018 when she tried to use the benefits as the emails show.
- Held a meeting March 2018 with HR recommending she resign.
- Canceled all of her enrolled health benefits April 2018.
- Refused to offer Cobra Insurance unless she signed their document stating she had, had continuous coverage without lapse until September 2018.
- Exhibit (Z) shows cancellation of Ms. Watson's benefits June 2017 after the grievance, and February 2018 after.

**CONCLUSION**

The complainant Ms. Watson, has adhered to making a short plain statement describing the facts of the claim without legal arguments. The complainant Carmen Watson request the Wichita

District court grant maximum allowed damages to the petitioner pursuant to the employers' multiple violations, and prohibited acts of the Anti-Retaliation provision of Title VII, compensatory, punitive, special, emotional distress, and mental anguish damages pursuant to the Civil Rights Act of 1991 and all other allowed damages rightfully entitled to.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing and attached exhibits is true and correct.**

**Respectfully Submitted,**
*s/Carmen Watson*
**February 25, 2019**
