# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CARMEN N. WATSON,

    *Plaintiff,*

v.

    Case No. 19-1044-EFM-JPO

U.S.D. NO. 500 et al.,

    *Defendants.*

## MEMORANDUM AND ORDER

Defendants U.S.D. No. 500 ("the School District"), Lenora Miller, and Sandy Kiper move the Court to dismiss Plaintiff Carmen Watson's Amended Complaint (Docs. 35, 37, 39). For the reasons that follow, the Court grants the motions as to every claim except ADA retaliation against the School District. The District also moves the court to change the location of trial from Wichita to Kansas City (Doc. 12). That motion is also granted.

### I.    Factual and Procedural Background[1]

Watson worked as a bus driver for the School District from 2008 to 2018. Defendants Miller, Kiper, Miguel Martin, and Anita Rocha all had management positions within the district's Department of Transportation.

---

[1] The facts come from Watson's complaint and are considered true for the purposes of this ruling.

Watson alleges that she has suffered from numerous disabilities since 2014. On January 30, 2017, she complained to Martin, the assistant director of transportation, that Kiper and Rocha had mistreated her and other disabled bus drivers under their watch. In particular, she alleges that the supervisors derided the disabled employees as "FMLA-ers" and "fakers," gave them longer bus routes, and refused to sign them up for extra activities. Martin reputedly answered that "we need people who can really work" and that he appreciated Kiper and Rocha's "passion."

In February, Watson held a meeting with Lenora Miller, the executive director of transportation, to air her concerns. She alleges that Miller brought up Watson's spotty attendance record and told her to return to work. After this, Watson alleges the school district retaliated against her by cancelling her short-term disability benefits and critical-care insurance, which she had had for years without interruption.

Watson alleges that Kiper and Rocha continued to harass her by making fun of her attendance record, letting other drivers use her bus which forced her to find a spare, and changing her assigned bus routes. She complained to Miguel Martin again in April. Martin did not believe Kiper and Rocha's conduct warranted his action.

After driving one of the spare buses, Watson claims that she began suffering back pain because the driver's seat was stuck in an uncomfortable position. She asked Martin to "been seen at the job clinic." The assistant director denied her request on the grounds that she had failed to make her request within 72 hours. After reviewing the company policy, Watson informed Martin that she in fact had 30 days. Martin did not waver. Watson allegedly sought treatment elsewhere and was diagnosed with two herniated discs.

Watson also alleges that the district breached her confidentiality when one of the bus drivers found a report containing her personal information in his mailbox and put it inside a bus seat. She complained to Miller, the executive director, about this, who assured her the driver was no threat to her safety. Following the breach, Watson filed a grievance with district superintendent Cynthia Lane, detailing not only this incident but the previous instances in which she felt discriminated against by her supervisors. This was denied.

After this, she had another meeting with Miller. This meeting took place on June 9, 2017, and allegedly lasted over six hours. Watson describes the meeting as "inhumane," "demoraliz[ing]," and in violation of "numerous state and federal laws and regulations." The offending conduct was evidently the executive director's comment, "I've been really worried about you this year, wondering if you're going to make it. Is this something we need to talk about?" The concern was in reference to Watson's anxiety and depression, which Watson wanted to be confidential. Miller went on to advise that if Watson did not seek treatment, she could be reported or terminated. She reportedly made Watson explain her conditions in great detail. Finally, she told Watson the department would be evaluating her performance in the upcoming year. In Watson's view, this constituted "retaliat[ion] with threats [and] coercion to expose the petitioners private health records shortly after the petitioner exercised her right to free speech."[2]

After this, Watson claims that the district further retaliated against her by cancelling her short-term disability benefits and critical-care insurance. This is the same act she alleges occurred after her first meeting with Miller. It is unclear whether the district reinstated her insurance at any point between the two meetings.

---

[2] Doc. 43 p. 4.

Watson filed charges with the Kansas Human Rights Commission and the Equal Employment Opportunity Commission. The KHRC issued a finding of no probable cause. The EEOC dismissed her complaint and issued her a right to sue letter.

By September 2018, Watson had been on leave for several months, and now qualified as a retiree for the purposes of COBRA insurance. In order to get COBRA insurance, Watson alleges that the district made her sign a document representing that she had "been with continuing coverage without lapse up until September 1st, 2018." Watson said this was false and refused to sign.

Watson soon filed another charge of retaliation with the KHRC. She intended this second charge to be joined with the first, which was still pending. The KHRC dismissed the charge after finding out this action had been filed in the district court. It did not issue her a right to sue letter.

Watson filed this suit against the school district, Miller, Martin, Kiper, and Rocha. The precise nature of her allegations is difficult to determine because she does not specify her claims or put them in numbered paragraphs as required by Rule 10(b).[3] She invokes the Americans with Disabilities Act and claims the district unlawfully retaliated against her. She also refers to Titles VI and VII of the Civil Rights Act, Title IX of the Education Amendments, and the Rehabilitation Act. She cites 42 U.S.C. § 1983 and claims that the defendants have committed "unconstitutional violations" against her. In her response, she elaborates that she "should have been provided equal protection from retaliation for exercising free speech by the First and Fourteenth Amendment." Finally, she cites the Kansas Act Against Discrimination. She seeks

---

[3] Fed. R. Civ. P. 10(b).

damages against the defendants in the total sum of $500,000.  Defendants Miller, Kiper, and the district now move to dismiss under Rule 12(b)(6), arguing that Watson has not stated a claim upon which relief can be granted.

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal when the plaintiff has failed to state a claim upon which relief can be granted.[4]  Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[5]  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[6]  The court is required to accept the factual allegations in the complaint as true, but is free to reject legal conclusions.[7]  The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which the claims rest.[8]  The court construes the complaints of *pro se* plaintiffs liberally in the interest of justice.[9]  The court will not, however, advocate for the plaintiff or construct legal theories on her behalf.[10]

---

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[7] *McKenzie v. Office Depot Store*, 2012 WL 586930, at *1 (D. Kan. 2012).

[8] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (citations omitted); *see also* Fed. R. Civ. P. 8(a)(2).

[9] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[10] *Brown v. Via Christi Health*, 2010 WL 4930682, at *1 (D. Kan. 2010).

### III.     Analysis

Watson, as a *pro se* plaintiff, is entitled to a careful review of her complaint.  The Court determines that she is attempting to pursue claims of ADA and Title VII retaliation, violations of the First and Fourteenth Amendments (via 42 U.S.C. § 1983), and the Kansas Act Against Discrimination.  She also refers to Title IX of the Education Amendments, Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act, the Family and Medical Leave Act, and negligence, but she does so only offhandedly or in the context of another complaint.  The Court does not interpret Watson's complaint as seeking relief under any of these theories.

### a. Does Watson State a Claim for Retaliation Under the Americans with Disabilities Act?

Watson alleges that the defendants have unlawfully retaliated against her in violation of the Americans with Disabilities Act.  Defendants Kiper and Miller argue they are not subject to liability because they are not "employers" within the meaning of the ADA.  The school district argues it is not liable because it did not subject Watson to an adverse employment action and that, even if it did, it was not linked to Watson's protected activity.

The Americans with Disabilities Act's anti-retaliation provision declares: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter." [11]  To prove a violation of this provision, the plaintiff must show three elements: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her contemporaneously or subsequently; and (3) a causal connection

---

[11] 42 U.S.C. § 12203(a).

exists between the two.[12] The first element, that Watson engaged in a protected activity under the ADA, is not in dispute.

The second element requires that the employer's action be materially adverse, or "a significant change in employment status" such as "a decision causing a significant change in benefits."[13] Such an action will be found adverse only if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination."[14] The third element, a causal connection between the protected activity and the materially adverse action, can be met when the plaintiff shows "protected conduct closely followed by adverse action."[15]

The District asserts in conclusory fashion that "none of [Watson's] additional allegations support finding Defendant USD No. 500 subjected her to anything that rises to the level of an 'adverse employment action' or that there is any connection to her exercise of a protected activity and any employment action." In fact Watson alleges that the District cut her health insurance shortly after she complained to Lenora Miller about the unfair treatment she and other disabled employees allegedly suffered. This change in benefits is plainly sufficient to meet the standard for a materially adverse action.

It is also reasonable to draw a causal connection from the allegations based on timeframe alone: Watson alleges the District cancelled her short-term insurance "immediately" after her initial complaint to Miller. Watson can state a claim for ADA retaliation against the School District.

---

[12] *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997).

[13] *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1178, 1186-87 (10th Cir. 2011).

[14] *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

[15] *Brown v. Keystone Learning Servs.*, 2018 WL 6042592 (D. Kan. 2018) (quoting *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1091 (10th Cir. 2007)).

She cannot, however, state a claim against the individual defendants Miller and Kiper. The ADA anti-retaliatory provision by its clear terms applies to employers, which does not include supervisors such as Miller and Kiper. [16] To the extent she pursues ADA claims against those defendants, they are dismissed.

### b. Does Watson State a Claim for Retaliation Under Title VII?

Title VII prohibits discrimination against any individual "because of such individual's race, color, religion, sex, or national origin." [17] It also forbids retaliation against any employee who opposes such a practice. [18] Watson alleges no facts from which the Court can infer that any of the defendants retaliated against her for complaints based on race, color, religion, sex, or national origin. Instead, she claims that she has suffered retaliation after complaining of disability discrimination. Disability is a category not included in Title VII. [19] Accordingly, plaintiff's Title VII claims must be dismissed.

### c. Does Watson State a Claim for Relief under the First or Fourteenth Amendments?

Watson alleges that the defendants failed to provide her "equal protection from retaliation for exercising free speech by the First and Fourteenth Amendment." [20] Leaving aside the question of whether her claims are barred by the statute of limitations, or whether she can raise

---

[16] *See Fears v. Unified Govt. of Wyandotte Cty.*, 2018 WL 3348881, at *3 (D. Kan. 2018).

[17] 42 U.S.C. § 2000e-2 (1964).

[18] 42 U.S.C. § 2000e-3.

[19] *Jarrett v. Sprint/United Mgmt. Co.*, 37 F.Supp. 2d 1283, 1287 (D. Kan. 1999).

[20] Doc. 42 p. 5.

the issues for the first time in a response to a motion, or whether the individual defendants can assert qualified immunity, the Court finds Watson's claims without merit.

42 U.S.C. § 1983 imposes liability on "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another of "any rights, privileges, or immunities secured by the Constitution."[21] It is well established that § 1983 does not create any substantive rights in itself, but merely provides a remedy for existing constitutional rights.[22]

One of those rights is the right to free speech guaranteed by the First Amendment.[23] The First Amendment does not protect "a public employee [who] speaks not as a citizen upon matters of public concern, but instead as an employee upon matters of only personal interest."[24] This generally includes employer discrimination and retaliation, where Congress has provided remedies elsewhere in the law.[25]

Watson alleges that Miller, the director of transportation, "began to retaliate with threats [and] coercion to expose the petitioners private health records shortly after the petitioner exercised her right to free speech."[26] This is a component of her broader retaliation claim, which

---

[21] 42 U.S.C. § 1983 (1996).

[22] *Gallegos v. City and County of Denver*, 984 F.2d 358, 362 (10th Cir. 1993).

[23] U.S. CONST. amend. I.

[24] *Connick v. Myers*, 461 U.S. 138, 147 (1983).

[25] *See Davis v. California Dep't of Corrections*, 1996 WL 271001, at *13 (E.D.Cal. 1996) ("Thus, while Title VII provides a comprehensive scheme for employees who are subjected to retaliation, the First Amendment, through § 1983, ought not to be read so expansively that the scheme of Title VII, with its provisions for agency involvement, is circumvented and perhaps defeated."); *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 420 (7th Cir. 1989) (holding that a "run-of-the-mine single plaintiff discrimination case" is not a matter of public concern and does not raise a First Amendment issue); *Hale v. Emporia State Univ.*, 265 F.Supp.3d 1236, 1241 (D. Kan. 2017) (holding that complaints of discrimination must involve matters of public concern to implicate First Amendment).

[26] Doc. 43 p. 4.

implicates no public concerns and is properly under the ADA, not the First Amendment. Watson has not pled a viable First Amendment claim.

The Fourteenth Amendment prevents a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."[27] As a matter of law, employment retaliation does not implicate the Equal Protection Clause.[28] Watson seemingly alleges that the defendants' retaliation against her violated her right to equal protection. This is plainly unsupported by the law. Thus, Watson's constitutional claims must be dismissed.

### d. Does Watson State a Claim for Relief Under the Kansas Act Against Discrimination?

The defendants argue that Watson cannot pursue a claim under the Kansas Act Against Discrimination because she has failed to exhaust administrative remedies. They are correct. The KAAD requires the plaintiff to meet certain administrative requirements before being able to sue in federal court.[29] In particular, the plaintiff must file a complaint with the Kansas Human Rights Commission.[30] If it is denied, the plaintiff may petition the KHRC for reconsideration.[31] If she fails to do so, she may not sue in a court of law.[32]

---

[27] U.S. CONST. amend. XIV, § 1.

[28] *Long v. Laramie Cty. Community College Dist.*, 840 F.2d 743, 752 (10th Cir. 1988); *Zinn v. McCune*, 949 F.Supp. 1530, 1539 (D. Kan. 1996) ("No clearly established right exists under the Fourteenth Amendment's Equal Protection Clause to be free from retaliation.").

[29] *Simmons v. Vilets Farmers Co-op Ass'n*, 19 Kan.App.2d 1, 3-4 (1993).

[30] *Nixon v. Muehlberger Concrete Const. Co.*, 170 F. Supp.2d 1123, 1125-26 (D. Kan. 2001).

[31] K.S.A. § 44-1010.

[32] K.S.A. § 44-1010; *United Steelworkers of Am. v. K.C.C.R.*, 253 Kan. 327, 333 (1993) ("Under K.S.A. 1992 Supp. 44-1010, no cause of action accrues until a petition for reconsideration is at least filed with the administrative agency.").

Although Watson filed two complaints with the KHRC, she does not allege that she has sought reconsideration of either of them. Accordingly, she has not met her administrative requirements, and the Court lacks the ability to hear her KAAD claims at this time. They are dismissed.

### e. Should the Place of Trial be Moved from Wichita to Kansas City?

The district asks for the location of trial to be moved from Wichita to Kansas City. Watson opposes this request and argues that the place of trial is her choice.

The court may transfer a civil action to "any place within the division in which it is pending."[33] In doing so, the court considers several factors: (1) the plaintiff's choice of forum; (2) accessibility of witnesses and evidence; (3) cost of proof; (4) enforceability of judgment; (5) relative advantages and obstacles to a fair trial; (6) possibility of congested dockets; (7) possibility of conflict of laws; (8) advantage of a local court determining areas of local law; (9) all other practical considerations.[34]

Several of these factors are not relevant here. Two of them, however, have great importance. The first is the accessibility of witnesses. Watson lives in Kansas City, and will likely be a witness on her own behalf. The district is located in Kansas City. Miller and Kiper, though now dismissed from this case, may still be required to testify. They both live in Kansas City. Clearly Kansas City is the best choice both for the witnesses Watson may use to build her case as well as those the district may use in its defense.

---

[33] 28 U.S.C. § 1404(c).

[34] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)).

The second relevant consideration is Watson's preference, which is clearly Wichita. But Watson resides in Kansas City. The plaintiff's choice of forum is entitled to substantially less weight when she does not live in her chosen city. [35] Watson's preference does not persuade the Court to keep the case in Wichita. The Court grants the District's motion and orders that the trial be set in Kansas City.

## IV. Conclusion

Watson can state a claim for ADA retaliation against the school district because the allegations, treated as true, plausibly raise an inference that the district undertook a materially adverse action against her which was causally related to her complaints of disability discrimination. She cannot state such a claim against Miller or Kiper because the ADA applies only to employers. She cannot state a retaliation claim under Title VII because her claims are related to her disability, not her race, sex, or other protected class. She cannot state a claim under the First or Fourteenth Amendments because she does not allege any facts from which the Court can rationally infer that her free-speech rights as a private citizen have been violated, and because employment discrimination is not a basis for an equal protection claim. She cannot recover under the KAAD because she has failed to meet her administrative requirements. To the extent she makes other claims, they are also denied because they are not clear enough for the Court to identify. Finally, the trial is moved to the Kansas City location of the United States District Court for the District of Kansas, out of convenience for the parties and witnesses.

---

[35] *Frame v. Salina Regional Health Center, Inc.*, 2008 WL 4001185, at *2 (D. Kan. 2008); *see also Paul v. Int'l Precious Metals Corp.*, 613 F.Supp. 174, 179 (D.C. Miss. 1985) ("The plaintiff's choice of forum is entitled to little consideration where, as in the instant case, he has sued in a district other than the district in which he resides.").

**IT IS THEREFORE ORDERED** that U.S.D. 500's Motion to Dismiss (Doc. 35) is hereby **GRANTED AS TO EVERY CLAIM EXCEPT RETALIATION UNDER THE AMERICANS WITH DISABILITIES ACT.**

**IT IS FURTHER ORDERED** that Defendant Lenora Miller's Motion to Dismiss (Doc. 37) is hereby **GRANTED.** Defendant Miller is terminated from the case.

**IT IS FURTHER ORDERED** that Defendant Sandy Kiper's Motion to Dismiss (Doc. 39) is hereby **GRANTED.** Defendant Kiper is terminated from the case.

**IT IS FURTHER ORDERED** that U.S.D. 500's Motion to Change Venue (Doc. 12) is hereby **GRANTED.** Trial in this matter is moved to the Kansas City, Kansas Federal Courthouse.

**IT IS FURTHER ORDERED** that U.S.D. 500's Motion to Dismiss (Doc. 10) is hereby **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated this 30th day of July, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE