IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CARMEN N. WATSON,

    *Plaintiff,*

vs.

    Case No. 19-1044-EFM-JPO

USD NO. 500, KANSAS CITY, KANSAS,

    *Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Carmen Watson sues Defendant Unified School District No. 500 ("the District") under the Americans with Disabilities Act ("ADA"), as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 *et seq*. Pursuant to the Court's previous orders, Watson's remaining claim is for lost front pay. She alleges that the District retaliated against her by canceling her (1) short-term disability benefits in 2017 and 2018 and (2) health insurance benefits in 2018. This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. 137). Because the Court concludes that Watson has not met her burden, the Court grants Defendant's motion.

## I.     Factual and Procedural Background[1]

Watson began working as a bus driver for the District in 2008.  Sometime before January 2017, Watson selected to voluntarily deduct from her paycheck the premium for a short-term disability policy through Unum Life Insurance Company ("Unum").  On January 29, 2017, Unum notified the District that it was canceling the payroll deduction premiums for Watson and four other employees.  This caused Watson's paycheck, and those of the four other individuals, to be automatically adjusted beginning with their February 15, 2017 paychecks.

On January 30, Watson verbally expressed concerns to the District regarding treatment she received from her co-employees during and after she had called in sick for work.  Watson followed up on her concerns in a February 2 email.  In response, the District's Executive Director of Operations met with Watson to discuss Watson's concerns.

Watson was absent from work from February 21 to March 31.  She submitted a short-term disability claim form to Unum, and it approved her disability benefits for the time period from February 18 to March 31.  Watson testified that she is not aware of any short-term disability benefits she requested from Unum in 2017 that she did not receive.

On May 24, Watson submitted a written complaint to the District alleging discrimination, harassment, and retaliation.  This complaint contains no allegations, however, that her benefits were terminated in retaliation for making complaints of discrimination.  Watson met with the District's Executive Director of Operations to discuss her grievance on June 5.

---

[1] The facts are taken from Defendant's Memorandum in Support and are undisputed as Plaintiff did not file a response to Defendant's Motion for Summary Judgment.

Later that summer, Watson informed the District that the premiums for her short-term disability were not being withheld from her paycheck. She did not complain at the time that the change to her withholdings was retaliation for her complaining about disability discrimination. An adjustment was made to reinstate withholdings for the premium and to account for unpaid premiums from February 2017 through July 2017.

Between April 3, 2017, and January 18, 2018, Watson was absent from work for approximately 40 days. The last day Watson physically worked for the District was January 18, 2018. On January 29, she notified the District that her doctor placed her on short-term disability leave. Unum approved Watson's voluntary disability benefits effective January 23 through March 6. On March 7, Watson sought an extension from the District of her leave of absence from March 30 through the end of the school year. On March 14, the District sent Watson a letter advising her that all of her available leave was exhausted and that her leave of absence would expire on April 2. That same day, Unum extended the approval of Watson's benefits through April 3.

On April 3, the District sent Watson a letter informing her that she was required to return to work with an approved doctor's note no later than April 9, and if she was unable to do so, she would be processed for separation via resignation effective April 9. Although Watson did not return to work by April 9, the District's Board of Education did not formally separate Watson from employment because Watson had applied for long-term disability retirement through the Kansas Public Employees' Retirement System. Unaware that Watson's separation had been delayed, however, the District's Benefits Department notified Watson's health insurer that Watson had been separated from employment, resulting in Watson's health insurance being prematurely canceled.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

Because Plaintiff is proceeding pro se, the Court must be mindful of additional considerations. "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[8] There are limits, however, to the

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 325 (1986)).

[5] *Id*. (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[8] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

Court's leniency. "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[9] Additionally, a pro se litigant is not excused from complying with the rules of the Court and is subject to the consequences of noncompliance.[10]

For example, when a pro se plaintiff fails to timely file a response, the Court will consider and decide the motion as uncontested, and ordinarily, will grant the motion without further notice.[11] At summary judgment, however, lack of response alone is not enough to grant the moving party's motion.[12] Although the Court may move forward without waiting for a response, the Court must still examine the pleadings to determine whether summary judgment is appropriate.[13] By failing to file a response within the time specified by the local rule, a party waives the right to respond or controvert the facts asserted in the summary judgment motion.[14] As a result, the Court accepts as true all material facts asserted and properly supported in the summary judgment motion.[15] "[O]nly if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."[16]

---

[9] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[10] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that pro se litigants follow procedural rules and citing various cases dismissing pro se cases for failure to comply with the rules)).

[11] D. Kan. R. 7.4(b).

[12] *Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

[13] *Id.*

[14] *Id.* at 1194.

[15] *Id.* at 1195.

[16] *Id.*

### III.     Analysis

Watson's sole remaining claim is for front pay under the ADA.  Watson alleges that the District retaliated against her by canceling her (1) short-term disability benefits in 2017 and 2018 and (2) health insurance benefits in 2018.  The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter."[17]  To establish a prima facie case of retaliation under the ADA, Watson must establish: (1) that she engaged in protected activity; (2) that "she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity;" and (3) "that there was a causal connection between the protected activity and the adverse action."[18]

Under the *McDonnell Douglas* framework, if Watson establishes her prima facie case, the burden shifts to the District "to articulate a nondiscriminatory reason for the adverse employment action."[19]  If the District satisfies its burden of production, Watson must show that the District's articulated reason for the adverse action is pretextual.[20]  Here, the District does not dispute that Watson engaged in protected activity under the ADA.  Thus, the Court will turn to whether Watson was subjected to an adverse employment action and whether there was a causal connection between the protected activity and the alleged adverse action.  The Court will address Watson's two adverse action claims separately.

---

[17] 42 U.S.C. § 12203(a).

[18] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (alteration and citation omitted).

[19] *Id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[20] *Id.* (citation omitted).

**A.    The District's Removal of Watson's Short-Term Disability Paycheck Deduction**

First, the Court must determine whether the District's termination of deductions of short-term disability payments from Watson's paycheck in 2017 constituted an adverse action under the ADA.[21]  "To establish an adverse action, 'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' "[22]

The Court concludes that the District's termination of Watson's payroll deduction for short-term disability insurance constituted an adverse action because reasonable employees would be dissuaded from making a charge of discrimination if they believed their employer might terminate their payroll deductions, possibly resulting in termination of their insurance benefits.[23] Although the District argues that Watson was not harmed by the act because Watson was paid her short-term disability benefits despite the removal of the premium deduction, that Watson was not ultimately harmed by the action does not alter whether a reasonable employee would be dissuaded from making future charges of discrimination.  Further, that the District reinstated the deduction upon request by Watson has no bearing on whether the act constituted an adverse action at the time it was done.

Having found an adverse action by the District, the Court must determine whether there was a causal connection between Watson's protected activity and the District's adverse action.  "A

---

[21] Although Watson's Complaint asserted that the District canceled her short-term disability benefits, the undisputed facts show that Watson's benefits were not canceled, but rather, that her payroll deductions were temporarily stopped.

[22] *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (citation omitted).

[23] *See Gwinnett Cty. Int'l Bhd. v. Gwinnett Cty.*, 2008 U.S. Dist. LEXIS 138155, at *18 (N.D. Ga. 2008) ("As such, this Court must assume that Plaintiffs enjoyed the benefit of payroll deductions, and, through implementation of the Policy, Defendants took that benefit away, constituting an adverse action.").

'causal connection' between a protected action and a subsequent adverse action can be shown through 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' "[24]  The Court concludes that a causal connection is established here.  The Tenth Circuit has repeatedly held that very close temporal proximity "suffices to show the necessary causal connection, at least in the absence of substantial contrary evidence."[25]  Here, Watson complained of disability discrimination on January 30.  Two weeks later, Watson's February 15 paycheck—covering February 1 through February 15—did not contain her deduction for her short-term disability insurance premium.  Because the Tenth Circuit has concluded that a one and one-half month period between a plaintiff's protected activity and an employer's adverse action may itself establish a prima facie case of causation, the Court concludes that the two-week window between Watson's complaint and the removal of her disability insurance deduction from her paycheck sufficiently establishes causation.[26]

Because the undisputed facts establish a prima facie case of retaliation, the District must present evidence of a legitimate, nondiscriminatory reason for its action.  The District presents an affidavit from its Senior Benefits Clerk that the District received notification from Watson's insurer on January 29 that Watson's—and four other employees'—deductions were being canceled.  The Benefits Clerk reported that this notification resulted in automatic adjustments to

---

[24] *EEOC v. C.R. Eng., Inc.,* 644 F.3d 1028, 1051 (10th Cir. 2011) (citations omitted).

[25] *Jarvis v. Potter*, 500 F.3d 1113, 1126 (10th Cir. 2007) (citing *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171–72 (10th Cir. 2006) (holding that action within six weeks of protected action sufficed to establish causal-connection element of prima facie case)).

[26] *See Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation)).

the affected employees' paychecks.  The Court concludes that this is a legitimate, nondiscriminatory reason for the cancellation of Watson's insurance deduction.

Because the District has met its burden of producing a legitimate, nondiscriminatory reason for its adverse action, Watson is required to establish that the District's proffered explanation was pretextual.  "A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.' "[27]  Here, Watson has failed to respond to the District's motion for summary judgment or raise any such inconsistency in the District's proffered reason for the cancellation of her insurance deduction.  Summary judgment on Watson's retaliation claim for the cancellation of her insurance deduction is therefore appropriate.

**B.    The District's Cancellation of Watson's Health Insurance**

Next, the Court must determine whether Watson has set forth a prima facie case that the District retaliated against her by canceling her health insurance benefits in April 2018.  Cancellation of healthcare benefits is undoubtedly an adverse action that would discourage a reasonable employee from supporting a charge of discrimination.[28]  Although the District argues that the termination of Watson's benefits was the result of a misunderstanding, this does not defeat Watson's prima facie case.  "[A] defendant cannot defeat a plaintiff's prima facie case by

---

[27] *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (quoting *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997)).

[28] *See Hayes v. SkyWest Airlines, Inc.*, 2019 WL 9272087, at *1 (D. Colo. 2019) ("A reasonable employee might well have been discouraged from exercising his rights under the FMLA were he to face the prospect of losing health insurance.").

articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual."[29]

Having found that Watson has established an adverse action, the Court must determine whether Watson has established a causal connection between her protected activity and the cancellation of her health insurance. The Court concludes that she has not. Watson reported disability discrimination to the District on January 30, 2017, and completed a formal grievance form on May 24, 2017. The District did not notify Watson's health insurer of her separation from employment until April 2018. "[W]here a considerable length of time has elapsed between a protected activity and an adverse employment action, a plaintiff wishing to survive summary judgment must present additional evidence tying the adverse employment actions to the plaintiff's protected activity."[30] Here, Watson has presented no such evidence. Thus, Watson has failed to make a prima facie case of retaliation for the cancellation of her health insurance benefits.

Even if Watson had established her prima facie case, the District produced a legitimate, nondiscriminatory reason for termination of Watson's benefits. After an absence lasting from January 29, 2018, through March 2018, the District notified Watson on March 14, 2018, that she had exhausted all available leave and that her leave of absence would end April 2, 2018. The District further advised Watson on April 3, 2018, that she would be separated from employment on April 9, 2018, if she did not return to work. After Watson did not return to work by April 9,

---

[29] *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000) (citation omitted).

[30] *Foster v. Mt. Coal Co., LLC*, 830 F.3d 1178, 1191 (10th Cir. 2016) (quotations, alterations, and citations omitted).

the District's Benefits Department notified Watson's health insurer that Watson had been separated from employment, which resulted in the cancellation of Watson's health insurance.

An employee's termination from employment is a legitimate, nondiscriminatory reason to terminate health insurance. Although Watson had not in fact been terminated from employment pending a decision regarding Watson's eligibility for long-term disability retirement, the District's Benefits Department believed that she had been terminated. "[T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs."[31] Here, the District presented evidence that the Benefits Department mistakenly believed that Watson had been separated from employment. Thus, even if Watson had met her burden, the District has established a legitimate reason for the termination of Watson's healthcare benefits. Further, Watson has failed to file a response to the District's motion or set forth evidence that would cause a reasonable juror to question the District's stated reasoning.

Watson has failed to meet her burden of production on either retaliation claim. The Court therefore grants summary judgment to the District.

**IT IS THEREFORE ORDERED** that Defendant Unified School District No. 500, Wyandotte County, Kansas' Motion for Summary Judgment (Doc. 137) is **GRANTED**.

---

[31] *Proctor v. UPS*, 502 F.3d 1200, 1211 (10th Cir. 2007) (quotations, alterations, and citations omitted).


-12-

**IT IS SO ORDERED**.

This case is closed.

Dated this 15th day of March, 2021.

*/s/ Eric F. Melgren*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE